Nott, J.,
delivered the opinion of the court:
This is an action brought under the Abandoned or captured property Act to recover the proceeds of one hundred and two bales of cotton captured in Louisiana, alleged to amount to $25,290.
The claimant, a subject of France, resident in New Orleans, in March and April, 1862, gave to one Desmares two considerable sums of money, and constituted him his agent to buy cotton in the interior of the State. Shortly after this the city was captured by the forces of the United States, and from -that time the principal remained within the Union, and the agent within the Confederate lines.
With the money thus placed in his hands the agent bought cotton, which is a part of the subject of litigation. But subsequently, in 1863, the principal transmitted to the agent three several sums of Confederate money, amounting to $30,000, with which the agent bought other cotton, that is also the subject of litigation.
As to the first of these transactions the agency was lawful, and the purchases valid, and the principal became the owner of the property under Lapene & Ferre’s Case, (6 C. Cls. R., p. 363.) As to the second of the transactions, a resident alien owes the same obedience to the law of the place in which he is, be it municipal or military, as a citizen ; and the principal here had no right to correspond with his agent across the military lines, and being forbidden both by municipal and military law to hold commercial intercourse with him, acquired no valid title to the propertyillegally purchased. (Grossmeyer’s Case, 9 Wall. R., p. 72; Ensley’s Case, 6 C. Cls. R., p. 282.)
The cotton to which a valid -title was acquired consisted of five different parcels, procured from five different persons. The capture of two of these parcels, amounting to seventy-six bales, is satisfactorily shown; as to the remainder, amounting to one hundred and thirty bales, the proof of capture fails. Ail attempt is, indeed, made to show the capture of seven bales, but the witness relied upon also shows that seven bales were at a public press, and that “ there were several lots on the place,” *405 ancl there is no attempt made to identify these seven bales as a part.of the claimant’s “lot.”
As to the seventy-six bales which were captured, an objection is taken by the. defendants’ counsel going to the measure of damages. It is testified to by Colonel Chickering, the military governor of the Teche country during the spring campaign of 1863, that about six thousand bales were captured. It is next shown by several witnesses that the captured property ordinarily went down the Teche and Atehafalaya on steamboats to Brashear, and thence, by railroad, to New Orleans. It is next shown by the report of the chief quartermaster at New Orleans that only about three thousand bales were received over the Opelousas Railroad. Hence, it is argued, half the captured property was lost in transitu, and the claimant must contribute to the loss.
This objection is well taken if it be founded on fact. But the report of the chief quartermaster does not sustain it. That report does not refer to the sources whence the cotton came, but merely to the railroad and transports from which the quartermaster received it. A large part of it is credited to the transports, and, as there is water communication between Brashear and New Orleans, it would be mere conjecture to say that none went by transport and all went by railroad. In this case the burden of proof is on the defendants; the cotton has been traced into their hands; if they rely upon a loss they must prove a loss by positive evidence or by negativing all reasonable presumptions. The report of the chief quartermaster shows more than six thousand bales received, and it would be susceptible of proof that all of the six thousand bales did not come from the Teche country.
But, on looking further into the report, we find that one item is of 3,420 bales received from Captain S. W. Gozzens; and, on looking further into the case, we find a report from this same Captain Cozzens which illustrates the danger of conjecture, and puts the matter in doubt entirely at rest. His report, addressed to the chief quartermaster, says:
“ Colonel : In reply to your communication of 1st instant, asking for any information I may have relative to the cotton procured by military operations on the Bayou Teche and, its vicinity early in the summer of 1803,1 have the honor to state that at that-time I was connected with the United States Quartermas *406 ter’s Department in tbis city, and received some six thousand hales of the cotton in question in New Orleans, a portion of it from the hands of the agents of the Opelousas Railroad, and a part from United States transports arriving at this port.”
The proceeds of tbis cotton liave been fixed by previous decisions at $192 per bale, (Haler's Case, 4 C. Gis. B., p. 372; Lapene Ferre’s Case, 6 id., 370,) and the judgment of the court is that the claimant recover the proceeds of seventy-six bales, amounting in the aggregate to $14,592.
[The following order was then made:]
In this case the entry of judgment will be suspended until the findings of fact be framed and settled.
The party desiring to appeal will prepare, within ten days after the decision, and submit to the court, and also to the opposing party, a draught of findings in conformity with the opinion of the court, and of any specific fact not indicated in the opinion which he may deem material
The opposing party, within ten days from the time of receiving the proposed findings, will prepare and submit to the court any amendment which he may desire, and any specific fact not included in the others which he may deem material.